UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

MICHAEL TORRENCE,
    *Petitioner,*

Electronically Filed

CASE NO: 3:25-cv-237-DJH

VS.

**PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C.A. §2254**

LAURA PLAPPERT, in her official capacity as
    Warden of Kentucky State Penitentiary,
    *Respondent.*

Comes the Petitioner, Michael Torrence, by counsel, and pursuant to 28 U.S.C. § 2254 files this Petition for Writ of Habeas Corpus, and asks this court to order that he be released from the custody of the Respondent and the Commonwealth of Kentucky, to order the Commonwealth of Kentucky to set aside and vacate his convictions and sentences for Assault in the First Degree (Assault I), Possession of Handgun by a Convicted Felon (PHCF), and Persistent Felony Offender in the Second Degree (PFO II), and for any other relief which law and justice require in this matter.

**NOTICE OF INTENT TO SUPPLEMENT**

This petition is filed as a "bare bones" petition intended to raise all claims which the undersigned has a good faith basis to believe are viable, in sufficient detail to ensure that the petition is timely filed and preserves those issues. Shortly after filing this Petition, the undersigned will file a request for a briefing schedule which would permit the undersigned to complete her investigation, to brief the issues more fully, and possibly to add or withdraw claims. The current document is not intended as an exhaustive discussion of the claims presented.

1

## I. PARTIES

1. Petitioner is Michael Torrence, and he is currently in the custody of the Commonwealth of Kentucky, Department of Corrections, at the Kentucky State Penitentiary, 266 Water Street, Eddyville, Kentucky 42038.

2. Respondent is Laura Plappert, Warden of the Kentucky State Penitentiary, 266 Water Street, Eddyville, Kentucky 42038, and she is represented by Russell Coleman, Attorney General of the Commonwealth of Kentucky.

## II. PROCEDURAL HISTORY

3. On June 9, 2016, Petitioner, Michael Torrence (Mr. Torrence), was indicted in the Jefferson Circuit Court, Division Seven, for Assault in the First Degree (Assault I), Possession of Handgun by a Convicted Felon (PHCF), Wanton Endangerment in the First Degree (WE I), and Persistent Felony Offender in the Second Degree (PFO II). Indictment No. 16-CR-1550, State Court Record ("R.") Vol. I at 1.

4. On January 19, 2018, after a four-day trial, Mr. Torrence was found guilty of Assault I, PHCF, and PFO II. He was found not guilty of wanton endangerment. The jury recommended a sentence of 15 years on the Assault I, 5 on the gun possession charge, enhanced to 25 years and 15 respectively by the PFO II count, to run concurrently. R. 141-143. The defense filed a timely Motion for New Trial. R 149-153. Petitioner subsequently engaged new counsel who argued the Motion. The Court entered its Judgment, including its denial of the Motion for New Trial, on May 22, 2018. Exhibit 1. R. 185-188; copy also filed at R. 199-202.

5. Mr. Torrence appealed the conviction and sentence to the Supreme Court of Kentucky. R. 203-204; Supreme Court Case No. 2018-SC-322-MR.

6. On February 20, 2020, the Kentucky Supreme Court affirmed the conviction and sentence. Opinion, *Torrence v. Commonwealth*, 603 S.W.3d 214 (Ky. 2020), Exhibit 2. Petitioner then filed a petition for certiorari in the Supreme Court of the United States (*Torrence v. Kentucky,* No. 20-485). On December 14, 2020, this Petition was denied.

7. On July 26, 2021, acting *pro se*, Mr. Torrence initiated a state post-conviction action in the Jefferson Circuit Court pursuant to RCr 11.42, alleging that his attorneys provided ineffective assistance of counsel in several regards at the trial and appellate levels.

8. On October 7, 2021, the Jefferson Circuit Court denied Petitioner's Motion. On November 4, 2021, Petitioner appealed the denial of his Motion to the Kentucky Court of Appeals (Case No. 2021-CA-1305-MR). Exhibit 3. On March 29, 2024, the Court of Appeals entered its Opinion affirming the Jefferson Circuit Court. Exhibit 4.

9. Petitioner filed his Motion for Discretionary Review in the Supreme Court of Kentucky (Case No. 2015-SC-000624). On December 12, 2024, the Court entered its Order denying discretionary review. Petitioner did not file a petition for certiorari in the Supreme Court of the United States.

### III. JURISDICTION OF THE COURT

10. Mr. Torrence has exhausted each claim he advances in this Petition in the courts of Kentucky. As such, jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 2241 and 2254. Additionally, Petitioner is timely filing this Petition within the one-year time limit imposed by 28 U.S.C. § 2244(d)(2), based upon the timely filing of the Motion for Discretionary Review.

### IV. PRIOR ATTORNEYS

11. The following addresses in this section are the current addresses listed by the Kentucky Bar Association for each attorney.

12. At the trial level, the following attorneys represented Petitioner: Sean P. Johnson, Deputy Louisville Metro Public Defender, 735 West Jefferson Street, Louisville, Kentucky 40202; Andrew H. Damota, Deputy Louisville Metro Public Defender, 735 West Jefferson Street, Louisville, Kentucky 40202; F. Todd Lewis, 600 West Main Street, Suite 300, Louisville, Kentucky 40202.

13. On direct appeal, the following attorney represented Petitioner: F. Todd Lewis, 600 West Main Street, Suite 300, Louisville, Kentucky 40202.

14. On Petitioner's Petition for Writ of Certiorari, the following attorneys represented Petitioner: Joshua D. Farley (counsel of record), 111 W. Washington Street, Suite 400, Louisville, Kentucky 40202; F. Todd Lewis, 600 West Main Street, Suite 300, Louisville, Kentucky 40202.

14. At all other stages, Petitioner proceeded *pro se*.

## STATEMENT OF FACTS

16. Petitioner readopts and realleges the foregoing as if fully set forth herein.

17. On May 17, 2016, between 4:00 and 4:30 in the afternoon, Gerrado Thomas was found by passersby in the street at the intersection of 26th and Greenwood Streets in Louisville, Kentucky, suffering from a gunshot wound. A beat officer arrived at the scene shortly and asked Thomas who had shot him. Thomas stated an individual with the nickname "Man Man" was had shot him, but provided no further name or identifying information except that he was a "shorter black male."[5] There was no dispute that several persons in that community went by the nickname "Man Man."[6] No eyewitnesses other than the victim actually saw the shooting, the assailant, or the vehicle alleged to have been driven by the assailant.

18. During an interview at the hospital a week or so later, Thomas claimed he had been trying to get a ride to work from an individual in a gray vehicle, and that the person Thomas

4

identified as "Man Man" was a passenger in the vehicle from which he was seeking a ride. Thomas claimed that this passenger had accused Thomas of having broken into his house at some earlier point. Thomas said he responded "Stop playing with me," thinking the accusation was a joke. The passenger then produced a gun, however, which he was holding between his legs. According to Thomas, as soon as he saw the gun, he opened the door to jump out of the moving vehicle. Thomas claimed he was shot in the back as he opened the door to the moving vehicle and exited. He testified that the vehicle slowed down some, and then drove away. No eyewitness saw the assailant nor any relevant car near, or exiting, the location where Mr. Thomas was eventually found in the street.

19. A detective conducted an interview of Thomas in the hospital on May 23, 2016. Again, Thomas maintained that he only knew the assailant's street name, "Man Man," not a real name. Thomas now claimed as well to know the location of a house where this person lived. Thomas was directly asked by the lead detective at that time whether he knew the real name of this "Man Man," and he insisted he did not. The police learned that the Petitioner resided at the house being identified by the victim, and then compiled a photopak of six photos, which included the Petitioner.

20. Meanwhile, however, prior to the showing of the photopak to Mr. Thomas by police, **Mr. Thomas had already been shown a single photograph of Petitioner,** identifying him as the assailant. This occurred when Mr. Thomas' family members and friends had come to visit him at the hospital. One of Mr. Thomas's hospital visitors was one Whitney Mitchell, who had already obtained a photo of the Petitioner from a social media site. When police returned to the victim at the hospital on May 26, 2016, to display the photopak pictures to him, Ms. Mitchell was already present. Ms. Mitchell had been visiting with Mr. Thomas, along with some other family members, and apparently had shown the photo of Petitioner to Mr. Thomas. Ms. Mitchell

5

even provided police with the copy of the photo of Petitioner she had obtained and shown to Mr. Thomas.

21. Indeed, the Commonwealth even conceded at trial that "police basically recruited the victim's mother and sister to try to figure out who this guy was." Police then proceeded, at that visit, following the showing of the single photo, to display the photopak of six photos to Mr. Thomas anyway, who identified Petitioner as the person who attacked him. The additional role of these friends and family in previously pointing to the home of Petitioner as that belonging to the alleged assailant was never made clear, because the trial court refused Petitioner's request for a hearing on the matter.

22. Petitioner later challenged, prior to trial, this identification procedure used by police, contending that it was improperly tainted by Ms. Mitchell having already shown the victim a copy of the social media photo of Appellant prior to the police identification procedure. Indeed, the evidence indicated that Ms. Mitchell had shown the victim this photo just prior to the latter having viewed the photopack provided by police, on the same day. Petitioner requested a hearing to scrutinize exactly how this identification procedure occurred, argued that the identification should be excluded from evidence as produced by an unduly suggestive procedure, and that Mr. Thomas should not be permitted to make any in-court identification of Torrence.

23. Despite its concession that the police had "recruited" the victim's mother and sister to "identify" the assailant, the Commonwealth contended, and the Court agreed, that the tainted identification procedure did not involve state action because Ms. Mitchell's actions in showing Mr. Thomas the single photograph of Mr. Torrence did not (at least facially) involve state action. The Court denied Petitioner a hearing to flesh out the contact between the police and Thomas' mother and sister regarding identification.

24. Based upon this identification, police then arrested Appellant, believing that they had sufficient probable cause to do so. Police questioned Appellant in custody. The latter maintained, as he did at trial, that he was not involved in the attack on Mr. Thomas, and had been with his five-year-old daughter during the day in question. The daughter and her mother both testified at trial consistently with this alibi.

25. The Kentucky Supreme Court, in affirming the trial court's denial of even a hearing on the matter of the pretrial identification, held that no state action was involved in the pretrial identification because it was not "arranged" by law enforcement.

26. Of course, without an evidentiary hearing on this issue the extent to which law enforcement was involved in arranging this pretrial identification-what the prosecutor meant when he admitted that police had "recruited" the lay family members to identify the suspect – remains unknown. The Court simply held "In this case, there is no evidence in the record that Thomas's family or girlfriend was acting at police behest when they located and showed Thomas the single photograph of Torrence downloaded from social media." The Court determined additionally that, since the victim was sufficiently cross-examined at trial, this was sufficient to attack any taint stemming from the prejudicial pretrial identification procedure.

**Cell Phone Tower Technology Evidence**

27. At some point in the investigation, police obtained a set of records from a cell phone provider purporting to be the historical records associated with a phone owned or used by the Appellant. Over the Appellant's pretrial and contemporaneous objection, these records were then used to form the basis of the lead detective's testimony about the nature of historical cell tower site data, and how such technology and data could be interpreted with regard to this case. The detective first testified in this regard generally about cell tower connection and location technology. He

testified about the nature of the latitude and longitude coordinates generated in the historical records; the nature of the azimuth reading and compass direction sector from which the phone connects to the tower; the manner in which cell phones connect to towers; that the location data is only generated during certain events on the phone; and that cell phones are always searching for the strongest signal and always connect to the nearest tower.

28. The detective then testified that his analysis of the portion of the records setting out historical cell tower site data led to a conclusion that the phone in question had connected to a cell tower located within 1.13 miles of the scene where the victim was found in the road. The detective stated that this connection occurred just prior to "the shooting." The detective further testified that the phone then connected to a second tower 1 kilometer from the "shooting scene" at 14:27 hours, which he claimed was 1 minute after "the shooting." The detective went on to conclude that his analysis of the data in question disclosed that the location of the Appellant's alibi was 11 miles from the cell tower. In closing argument, the Commonwealth essentially contended that, based upon the detective's testimony in this regard, it was impossible that the Appellant was in the area he claimed to be during the relevant time. During the entirety of the detective's testimony, the Commonwealth did not ask him a single question that could fairly be characterized as eliciting any qualifications, training or experience, on any level, with regard to his interpretation of the data and technology of historical cell tower locations.

29. Torrence, represented by the public defender, challenged this entire line of testimony and evidence prior to trial, by a motion which demanded "exclusion of any Cell phone tower GPS data tendered in discovery as inadmissible and requiring expert testimony," citing *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), as well as Kentucky precedent. Torrence's position below was that because the State was adamantly refusing to introduce the evidence via an

expert, despite it being the type of scientific, technical or specialized evidence requiring introduction through an expert, he was effectively deprived of the guarantee of confrontation and cross-examination secured by the Sixth Amendment, because the State's witness was incapable of answering substantive questions regarding the technology and conclusions drawn from it.

30. Indeed, as predicted, this was the type of answer offered by the lay police witness, on cross-examination, to a plethora of technical questions: "the way it was explained to me was... "; "I was told ... "; In effect, the defendant was cross-examining a hearsay declarant who was never named nor produced at trial. In its ruling on this matter, the Kentucky Supreme Court announced that it was fashioning a "new rule," in this case, regarding such evidence and testimony:

> […]lay testimony may be used to present historical cell-tower data so long as the testimony does not go beyond simply marking coordinates on a map. If the witness seeks to offer an opinion about inferences that may be drawn from that information, that witness must be presented as an expert witness under KRE 702 (for example, if a witness seeks to provide an opinion as to the location of the cell phone during the relevant time based on the plotted coordinates).

*Torrence v. Commonwealth,* 603 S.W.3d 214, 228 (Ky. 2020).

31. After three hours of deliberation in this case, the jury returned a verdict of guilty as to Assault I, and not guilty as to WE I. The jury then found Appellant guilty of possession of a firearm by a convicted felon. The jury, finally, recommended a total penalty of twenty-five (25) years.

32. As described above, the Supreme Court of Kentucky affirmed the conviction. *Torrence v. Commonwealth,* 603 S.W.3d 214 (Ky. 2020).

33. Petitioner then filed a Petition for Writ of Certiorari to the Supreme Court of the United States. *Torrence v. Kentucky*, No. 20-485 (Exhibit 4). Certiorari was denied on December 14, 2020.

## POST-CONVICTION PETITION IN STATE COURT

34. On July 26, 2021, 224 days after finality of his original conviction, Petitioner filed his Motion for relief from sentence pursuant to Kentucky RCr 11.42 (R. 243-246; Memorandum in Support, R. 247-265), alleging the following:

A. With respect to trial counsel, ineffective assistance of counsel for the following:

i. failure to object to a juror due to her relationship with a witness;

ii. failure to call witnesses to corroborate another juror's bias due to their interest;

iii. failure to fully impeach the victim;

iv. failure to offer expert testimony with cell phone towers and cell phone location;

v. failure to seek a trajectory/ballistics expert to investigate the victim's version of events;

vi. failure to object to the commonwealth's multiple false and/or unproven statements;

vii. cumulative error.

B. With respect to appellate counsel, Petitioner alleged ineffective assistance for failure to raise on direct appeal the following preserved errors:

i. multiple discovery violations, including a *Brady* violation;

ii. the detective should not have been allowed to testify to hearsay;

iv. the detective and the commonwealth should not have been allowed to testify to evidence that was not relevant and mentions a bad act and therefore inadmissible;

v. "the commonwealth should not have been allowed to assert a false statement."

R. 244. Petitioner also requested an evidentiary hearing. R. 247. The Commonwealth duly filed a Response. R. 276-285.

35. On October 7, 2021, the Jefferson Circuit Court, Division Seven, overruled Petitioner's Motion without a hearing. R. 288-292. Petitioner, proceeding *pro se,* filed his Notice

of Appeal to the Kentucky Court of Appeals on November 4, 2021. R. 293-294. On March 29, 2024, the Kentucky Court of Appeals affirmed the Circuit Court's denial of a hearing or relief. Case No 21-CA-1305, Exhibit 4.

36. On April 30, 2024, Petitioner, still *pro se,* filed a motion to extend the time to file a Motion for Discretionary Review. After some motion practice, the Motion for Discretionary Review was accepted by the Kentucky Supreme Court on July 2, 2024. However, the Motion for Discretionary Review was denied on December 12, 2024.

This Petition follows.

## GROUNDS FOR RELIEF

37. Petitioner readopts and realleges the allegations of Paragraphs One (1) through Twenty-Six (26) of the Petition the same as if fully set forth therein.

38. Petitioner was denied due process and effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution when counsel failed to object to a biased juror member sitting on the juror panel.

39. On 1/18/18 at 10:22 a.m. after hearing the commonwealth's opening statements that witness Val Morris would be testifying, juror 287183 requested to approach and stated the juror knew witness Val Morris and that Val Morris had dated her nephew and stayed at the juror's sister's house. The judge had asked both defense counsel and the commonwealth if they had any questions or objections and both parties stated they had no questions or objections. *See Virgil v. Dretke*, 446 F.3d 598 (5th Cir. 2006) holding counsel's failure to challenge two biased jurors was ineffective assistance).

40, Petitioner was denied effective assistance of counsel when trial counsel failed to call juror #2071060 's half-sister Waynesia as a witness to corroborate the biased-juror claim of

11

her connection to Turner (Petitioner's child's mother and testifying witness) due to her connection to Petitioner. During motion for a new trial, the juror was questioned as to her connection to the Petitioner, which she largely denied. The Kentucky Supreme Court court stated, "It seems as if Waynesia would have been important to corroborate or deny that Turner and the juror had spent substantial time together... We do not speculate as to what she might have said if called as a witness." *Torrence v. Commonwealth*, 603 S.W.3d 214, 221 (Ky. 2020).

41. **Petitioner was denied effective assistance of counsel when trial counsel failed to fully impeach the victim on all matters.** Gerrard Thomas was convicted of charges of lying to police and that would have weighed heavily upon the credibility of his testimony especially when Thomas statement changed numerous times to the detectives and while testifying as to the identity and description of the suspect and description of the vehicle."

42. **Petitioner was denied effective assistance of counsel when trial counsel failed to offer expert testimony as to cell tower and cell location information.**

43. The court allowed the detective, a fact witness not qualified as an expert witness, to testify to this information over defense objection. The Court pointed out that the defense could provide expert testimony for refutation or validation of the information testified to by the detective. Of course, through the discovery process, the defense was on notice of the issue and failed to request funding or otherwise take steps to seek such expert testimony. For example, the detective testified to how cell phones connected to the tower with the strongest signal, but could not explain the elements that cause a tower to give the strongest signal, other than that areas more populated need more towers because the amount of connections to a particular tower causes weaker connections.

**44. Trial counsel should have sought the assistance of a ballistics expert and possibly a medical expert to investigate the victim's claims regarding the shooting.** The victim testified to being in the backseat of the vehicle behind the driver and the Petitioner being in the front passenger seat. The victim stated he was shot by the Petitioner while exiting the vehicle from the driver's side back passenger door while the Petitioner was sitting in the front passenger seat to address the actual trajectory of the bullet and to compare that evidence with the wounds the victim's suffered.

45. "Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v. Washington*, 466 U.S. 668, 691 (1984). *See Rogers v. Israel*, 746 F.2d 1288 (7th Cir. 1984) ("In deciding whether a defense counsel's failure to investigate expert opinions was prejudicial, courts have considered whether such opinions were critical to the presentation of a defense.") *See also Sims v. Livesay,* 970 F.2d 1575, 1580-81 (6th Cir. 1992) (ineffective assistance found where counsel failed to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance).

**46. Petitioner was denied effective assistance of counsel when trial counsel failed to object to the commonwealth's misconduct when stating multiple false and/or unproven statements and further denied effective assistance of appellate counsel when failing to raise on direct appeal preserved objection to the commonwealth's misconduct when asserting false statements.** Failure to object to prosecutorial misconduct during arguments can be ineffective assistance of counsel. *See Cauthern v. Colson*, 736 F.3d 465 (6th Cir. 2013); *Girts v. Yanai*, 501 F.3d 743, 759-60 (6th Cir. 2011); *Hodge v. Hurley*, 426 F.3d 368, 375-376 (6th Cir. 2005).

47. For example, during closing arguments, the prosecution stated that before the victim had a chance to talk to anybody at the hospital, he had given a basic description of the defendant. However, defense counsel had already brought out that the victim did not give any identifying features of defendant and only had identified defendant after family shows picture to victim. Nonetheless, trial counsel failed to object to the statement.

48. Petitioner brought up several more examples in his RCr 11.42 petition in state court:

- [The prosecutor stated in closing tha]t she had heard arguments about home break-ins speaking of witness Val Morris' testimony but Val Morris doesn't testify to that. Val Morris states she didn't see a vehicle and that he was already in the middle of the street when she pulled up to the intersection on 1/18/18 at 10:26 a.m. Trial counsel fails to object.

- On 1/19/18 at 10:45 a.m. the commonwealth states, "he was telling people like Val Morris, he had been on his way to work, he got a ride and that he was shot over a break-in and that it was Man Man who shot him" speaking of the victim Gerrard Thomas. Trial counsel objects stating that Val Morris never testifies to this. The trial court allowed the statement without admonition to the jury because the commonwealth lies about his statement saying, "I said people like Val Morris, Val Morris testified that he said he was on his way to work" intentionally leaving out the segment 'he got a ride and that he was shot over a break-in and that it was man man who shot him.' Appellate Counsel fails to raise this on direct appeal.

- During closing arguments at 11:06 a.m. the commonwealth states that defendant let the car rental place clean up car to destroy any valuable forensic information available when testimony from the Enterprise employee was offered that nothing was wrong with the car.

Petitioner's Memorandum in Support of Motion to Vacate at at 11-13, R, 255-257.

49. Misrepresenting facts in evidence can amount to substantial error because doing so may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (*quoting Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974). "For similar reasons, asserting facts that were never admitted into

14

evidence may mislead a jury in a prejudicial way." *Id.* (*citing Berger*, 295 U.S. at 84, 55 S.Ct. 629); *Stermer v. Warren*, 959 F.3d 704, 725 (6th Cir. 2020).

50. **Appellate counsel rendered ineffective assistance of counsel in failing to raise on direct appeal numerous discovery and *Brady v. Maryland* violations that took place during trial**. Trial counsel for the Petitioner requested all discovery be disclosed prior to trial. The discovery and inspection rule pursuant to RCr 7.24 and 7.26 requires copies of all material to be turn over.

51. Trial counsel raised on a pretrial motion that phone records utilized in creating the map the detective used in cell phone tower and location testimony was not turned over to the defense. The Petitioner was denied the opportunity to prepare a defense against the use of the map especially when the detective's expert level of testimony in cell tower and location is called to question. The appellate court even made findings that the map was not entered into evidence.

52. Further, trial counsel had requested the 911 call to be turned over and the call was not turned over until after the presentation of evidence on 1/18/18 at 10:11 a.m. The call was exculpatory in nature as the caller gave a different description of a vehicle stating a small grey car when the commonwealth's theory was that the vehicle in question was a grey SUV Ford Explorer.

53. The withholding of all such materials by the Commonwealth denied Petitioner access to evidence which would have tended to exculpate him, or at a minimum, to reduce the penalty ultimately imposed upon him in a manner akin to the acts and actions condemned by the United States Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87-88 (1963). *See also Arizona v. Youngblood,* 488 U.S. 51, 57 (1988). Appellate counsel's failure to argue these potentially exculpatory issues denied Petitioner effective assistance of counsel.

**54.	Petitioner was denied effective assistance of appellate counsel when appellate counsel failed to raise on direct appeal trial counsel's objections to the detective being allowed to testify to hearsay.**

**55.**	The lead detective was permitted to testify over objection that at the scene of the crime eyewitnesses and officers saw a grey newer model Ford Explorer. The detective's statement is a pure example of hearsay. No officers or witnesses even testified to this, nor was there any report with any person giving such a statement. This also raised the issue of whether the Commonwealth's witness was testifying either falsely or to elements not provided to the jury, whether there were witnesses statements/reports that were not turned over to the defense, a discovery violation prejudicing the defense warranting a mistrial, which was not granted. However, appellate counsel failed to raise the issue.

**56.	Petitioner was denied effective assistance of appellate counsel when appellate counsel failed to raise on direct appeal that the commonwealth and the detective should not have been allowed to testify as to an alleged prior bad act.**

57.	The commonwealth and the detective were allowed to bring up a text message to the jury that a period of time after the crime took place, the Petitioner had sent out a text message stating that a Glock 40 firearm was for sale. The prosecution used this message to persuade the jury that the Petitioner was attempting to get rid of the weapon used to shoot the victim. A Glock 40 was never established to be used as the gun that shot the victim. The fragments found in the house next to the window were decisively found to not be ammunition from a Glock 40.

58.	The selling of a gun is evidence of an unrelated crime and was inadmissibly used as proof against the Petitioner' s character, violating KRE 404(b) aond FRE 404(b). The evidence was not material or in issue because the Glock 40 was never authenticated as being used or was

never even in the least proved to be the type of firearm used. *See Ward v. United States*, 995 F.2d 1317 (6th Cir. 1993) (counsel who allowed damaging character evidence to be admitted provided ineffective assistance). Appellate counsel's failure to raise the error on direct appeal constitutes ineffective assistance of counsel meriting relief.

59. Petitioner was denied effective assistance of trial and appellate counsel when both trial counsel and appellate counsel failed cumulatively in their errors in representation of the Petitioner. There were about fifteen instances of deficient performance between trial counsel at trial and appellate counsel failing to raise pertinent issues on direct appeal.

> 60. In order to obtain a new trial based upon cumulative error, a defendant must show that the combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair. This is so because errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone may cumulatively produce a trial setting that is fundamentally unfair."

United States v. Trujillo, 376 F.3d 593 (6th Cir. 2004).

61. Even if the individual issues listed here are deemed harmless, the sheer volume would in the least cumulatively prejudice Petitioner and, cumulatively, meet the test of *Strickland v. Washington*. Petitioner requests that this Honorable Court allow briefing to proceed, that this Court grant an evidentiary hearing, and that it find that counsels' cumulative errors rise to the level of ineffective assistance of counsel under *Strickland, supra.*

## PRAYER FOR RELIEF

WHEREFORE, Petitioner, Michael Torrence, prays this Court as follows:

A. To issue a writ of habeas corpus that the Petitioner be brought before the court to be discharged of his unconstitutional confinement and relieved of his unconstitutional conviction and sentence;

B. To issue a writ conditioned on the state court providing a new trial;

C. To order the Respondents to produce the video records and court record from the trial level and post-conviction level as are deemed just and appropriate under Rule 5;

D. To grant Petitioner, upon his request, the authority to obtain subpoenas *in forma pauperis* for witnesses and documents necessary for an evidentiary hearing;

E. To order the Commonwealth to nullify his convictions of Assault in the First Degree (Assault I), Possession of Handgun by a Convicted Felon (PHCF), and Persistent Felony Offender in the Second Degree (PFO II);

F. To order a briefing schedule, which would permit counsel for Petitioner a period of time to amend this petition, as described above, and require the Warden to file an Answer to Petitioner's habeas petition;

G. To permit Petitioner to file a motion to expand the record, if necessary;

H. To grant Petitioner the right to conduct discovery if requested in a separately filed motion;

I. To order and conduct an evidentiary hearing where proof may be offered and argument advanced concerning the allegations in this petition, which Petitioner will almost certainly request in a separate motion after the Warden files an Answer or other responsive pleading;

J. Assuming Petitioner does not prevail on all his claims, to allow him to file a motion explaining why a certificate of appealability (COA) should be granted on any claims this Court denies relief on before deciding whether to issue a COA on the various claims; and

K. Any and all other relief to which Petitioner may appear entitled.

Respectfully submitted,

/s/Maureen Sullivan
MAUREEN SULLIVAN
Attorney for Petitioner
American Life Building
471 West Main Street
Louisville, KY 40202
(502) 589-4566
(502) 548-1699
sullivanappeals@gmail.com

## VERIFICATION

I, Maureen Sullivan, declare under penalty of perjury as follows:

1. I am an attorney admitted to practice before this Court.

2. I represent Michael Torrence.

3. I make this verification as someone acting on behalf of Mr. Torrence pursuant to 28 U.S.C. §2242.

4. I wrote the foregoing petition, and I am thoroughly familiar with its contents. Some of the information contained in the Petition is information that I know to be true and correct based on my personal knowledge. The remaining information in the Petition is true and correct to the best of my knowledge, information, belief, and understanding.

/s/ Maureen Sullivan
MAUREEN SULLIVAN